1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

IN RE:                              MDL Docket No 06-1791 VRW
11  NATIONAL SECURITY AGENCY
    TELECOMMUNICATIONS RECORDS        ORDER
12  LITIGATION

13

    This Document Relates To:
14

    Clayton et al v AT&T Communications
15  of the Southwest, Inc, et al, C 07-
    1187; United States v Clayton, C
16  07-1242; United States v Reishus, C
    07-1323; United States v Farber, C
17  07-1324; United States v Palermino,
    et al, C 07-1326; United States v
18  Volz, et al, C 07-1396
    ────────────────────────────────────/
19

20          In 2006, the United States filed lawsuits seeking to

21  enjoin state officials in Maine, New Jersey, Connecticut, Vermont

22  and Missouri from investigating various telecommunication carriers

23  concerning their alleged disclosure of customer telephone records

24  to the National Security Agency (NSA) based on the Supremacy Clause

25  of the United States Constitution, the foreign affairs power of the

26  federal government and the state secrets privilege.  These cases,

27  together with a subpoena enforcement action brought by the same

28  Missouri officials who are defendants in the United States'

United States District Court
For the Northern District of California

injunction case concerning that state,[1] were transferred to this court by the Judicial Panel on Multidistrict Litigation (JPML) on February 15, 2007, with cross motions for dismissal and/or summary judgment pending.

The court denied those motions by order dated July 24, 2007 (Doc #334); 2007 WL 2127345.  The court held that the states' investigations into wiretapping activities did not violate the doctrine of intergovernmental immunity, were not preempted by federal statutes and did not infringe on the federal government's power over foreign affairs to a constitutionally impermissible degree.  Doc #334 at 16-34; 2007 WL 2127345 at *8-*14.  As to the government's argument based on the state secrets privilege (SSP), the court noted that the Ninth Circuit might well provide useful guidance when it ruled on the government's appeal in Hepting v AT&T Corp, 439 F Supp 2d 974 (ND Cal 2006), which was then pending before it.  Accordingly, the court denied the government's motion based on the SSP without prejudice to its renewal following the Ninth Circuit's decision in Hepting.  Doc #334 at 35; 2007 WL 2127345 at *15.

In the interim, two important developments have altered the posture of these cases.  Congress enacted, on July 10, 2008,

---

[1]  Clayton et al v AT&T Communications of the Southwest, Inc, et al, C 07-1187, is "a subpoena enforcement action brought by the state defendants in [Clayton] that * * * presents facts and issues identical to those raised by [Clayton]."  Doc #536 at 6 n 2. Because of the different posture of Clayton, plaintiff Robert Clayton has both joined in the briefs filed by the state officials in all six cases and has filed a separate opposition and surreply on the United States' motion. Doc ##592, 602.   The telecommunications carrier defendants therein have also filed a motion to dismiss a pending application to compel production of documents and to compel witnesses to appear and answer questions in Clayton.  Doc #594.  That motion is rendered moot by the court's rulings on the United States' motions.

United States District Court
For the Northern District of California

the FISA Amendments Act of 2008, Pub L No 110-261, 122 Stat 2436 (FISAAA), which contains a provision, section 803 (codified at 50 USC § 1885b), that the United States contends requires dismissal of all six of these actions.  Then, the following month, the Ninth Circuit remanded <u>Hepting v AT&T</u> without rendering a decision "in light of the FISA Amendments Act of 2008."  Docket No 06-17137 (9th Cir), order dated August 21, 2008.

I

The following summary of the six underlying state proceedings sets forth certain salient procedural events specific to each case as reflected in documents filed in this court.

A

The Maine case, <u>United States v Adams</u> (now <u>Reishus</u>), C 07-1323, began after Maine citizen James Cowrie petitioned the Maine Public Utilities Commission (MePUC) to investigate whether Verizon had shared its customers' records with the NSA.  Verizon responded that it could neither admit nor deny involvement in national security matters, but included seven "affirmative assertions of fact," including the following representations:

> 1.  Verizon was not asked by NSA to provide, nor did Verizon provide, customer phone records from any of its businesses, or any call data from those records.
>
> 2.  None of these companies —— wireless or wireline —— provided customer records or call data.
>
> 3.  Verizon's wireless and wireline companies did not provide to NSA customer records or call data, local or otherwise.

See Doc #536-2 (Ex A) at 38.  On August 9, 2006, MePUC issued an

3

United States District Court
For the Northern District of California

order reciting the seven representations and noting that "if [they] are in fact true, such statements could satisfy the concerns raised in the complaint."  Id at 39.  The order went on to state, however, that "[i]n order to fulfill our duty to consider whether to open an investigation * * * we find that we require as to each of the seven representations set forth above a sworn affirmation that such representation is true and not misleading in light of the circumstances in which it is made."  Id.  MePUC has not asked for any additional information from Verizon.  On August 21, 2006, the government sued in the United States District Court for the District of Maine to enjoin the MePUC from pursuing this inquiry. On February 8, 2007, Judge Woodcock preliminarily enjoined MePUC from enforcing the order.  See <u>United States v Adams</u>, 473 F Supp 2d 108 (D Me 2007).

The New Jersey case, <u>United States v Rabner</u> (now <u>Farber</u>), C 07-1324, was filed in response to the New Jersey Attorney General's issuance of subpoenas duces tecum to the telecommunication carriers named in the complaint (Civil Docket No C 07-1324, Doc #1-1 (Complaint)), of which the following document requests are, according to the United States, representative:

> 1.   All names and complete addresses of Persons including, but not limited to, all affiliates, subsidiaries and entities, that provided Telephone Call History Data to the NSA. * * *
>
> 2.   All Executive Orders issued by the President of the United States and provided to Verizon Concerning [sic] any demand or request to provide Telephone Call History Data to the NSA.
>
> 3.   All orders, subpoenas and warrants issued by or on behalf of any unit or officer of the Executive Branch of the Federal Government and provided to Verizon Concerning [sic] any demand or request to provide Telephone Call History Data to the NSA.

4

United States District Court
For the Northern District of California

1
2
3
      4.    All orders, subpoenas and warrants issued by or on
            behalf of any Federal or State judicial authority and
            provided to Verizon Concerning [sic] any demand or
            request to provide Telephone Call History Data to the
            NSA.

4  Doc #536-2 (Ex A) at 12.

5          United States v Palermino, C 07-1324, was filed in

6  response to an investigation by the Connecticut Department of

7  Public Utility Control (CtDPUC), prompted by a complaint filed by

8  the American Civil Liberties Union of Connecticut (ACLU), into

9  whether the local carriers violated Connecticut law.  Quoted below

10 are three of the approximately thirty interrogatories the ACLU

11 propounded to AT&T in the Connecticut proceeding:

12      ACLU-5      Has AT&T at any time during the Relevant Period
                    disclosed customer information and/or records to
13                  private parties, government entities and/or law
                    enforcement personnel when not compelled to do so
14                  by subpoena, warrant, court order or a request
                    under 18 USC § 2709 ("National Security Letter" or
15                  "NSL")?

16      * * *

17      ACLU-5b     If your response to ACLU-5 is yes, provide full
                    details of each occasion on which AT&T disclosed
18                  customer information and/or records to private
                    parties, government entities and/or law
19                  enforcement personnel when not compelled to do so
                    by subpoena, warrant, court order or NSL,
20                  including the date of each request, the
                    information sought, the information provided, and
21                  the date on which the information was provided.

22      * * *

23      ACLU-9      Has AT&T at any time during the Relevant Period
                    disclosed customer information and/or records to
24                  law enforcement or government personnel in
                    response to an NSL?
25

26 Doc #536-2 (Ex A) at 31-32.

27          United States v Volz, C 07-1396, was filed in response to

28 identical information requests propounded to AT&T and Verizon

**United States District Court**
For the Northern District of California

concerning their conduct and policies vis-à-vis the NSA by the commissioner of the Vermont Department of Public Service (VtDPS). Doc #536-2 (Ex A) at 15-17.  The requests asked, <u>inter alia</u>:

>    1.   Has AT&T disclosed or delivered to the [NSA] the phone call records of any AT&T customers in Vermont at any time since January 1, 2001?  If any such disclosures occurred prior to the date specified, please provide the date on which the disclosures commenced.
>
>    2.   If the answer to the preceding question is yes, please identify the categories of information AT&T provided to the NSA, including the called and calling parties' numbers; date of call; time of call; length of call; name of called and calling parties; and the called and calling parties' addresses.
>
>    * * *
>
>    7.   Please state how many AT&T customers have had their calling records disclosed or turned over to the NSA or any other governmental entity, on an agency-by-agency basis, since the inception of the disclosures?  Please separate the total into business and residential customers.
>
>    8.   State whether the disclosures of AT&T Vermont customer call information to the NSA and/or any state or federal agency is ongoing.
>
>    9.   State the number of occasions that AT&T has made such disclosures.

Doc #536-2 (Ex A) at 15-16.  AT&T refused to respond initially and did not do so until October 2, 2006.  Doc #624-2 at 2-3.  Verizon submitted detailed responses that explicitly excluded any information pertaining to "its cooperation, if any, with the NSA and any similar intelligence gathering activities."  Doc #596-9. Seeking a response from AT&T and more complete responses from Verizon in response to the May 17, 2006 requests, VtDPS petitioned the Vermont Public Service Board (VtPSB) to open investigations of the carriers (e g Doc #596-7 (Ex F)); in September 2006, the VtPSB ordered the carriers to respond.  Doc #596-8 (Ex G); Doc #536-2 (Ex

A) at 18-19.  On October 2, 2006, the United States filed suit to enjoin the investigation.  Doc #601-2 at 2.

According to the factual recital in an order promulgated by the VtPSB, the state proceedings then "remained largely dormant" pending the outcome of the federal proceedings.  Doc #601-2 at 3. After this court issued its July 24, 2007 order denying the United States' motion to dismiss and, in October 2007, the VtDPS provided to the VtPSB letters written by Verizon and AT&T to members of Congress that "acknowledged that they provided customer information to law enforcement officials in a wide variety of contexts."  Id. After taking briefing from the parties as to whether the state proceeding "should be reactivated," the VtPSB entered, on October 31, 2007, a "Procedural Order" which stated "[W]e have decided to allow discovery and to establish a schedule for further proceedings, albeit with a carefully limited scope."  Id at 9.

The order noted, discussing this court's July 24, 2007 opinion, that "some questions posed in state investigations fall outside the scope of the [SSP]," that "state investigations will not inevitably conflict with federal law" and that it did "not understand the privilege to be so broad as to prevent general inquiries into the practices of telecommunications carriers in responding to requests from third parties for protected consumer information."  Id at 9-10.  It explained the purpose of its renewed inquiry thusly:

> [T]he recent carrier letters to Congress state that the companies are providing information to the government in a wide variety of circumstances, including some without judicial oversight.  We seek to understand more about the nature of these practices, in large part so that we can determine whether the companies' privacy policies and practices

United States District Court
For the Northern District of California

1
2
3

> should more accurately disclose the variety of the
> carriers' actual practices.  Also, as we have
> previously noted, the [SSP] does not block
> consideration of whether Verizon's responses to the
> Department were misleading and inaccurate.

4   Id.

5       On August 8, 2008, counsel for the VtDPS wrote two letters

6   to the VtPSB ⸺ one pertaining to the Verizon proceeding, the other

7   pertaining to the AT&T proceeding.  Both contained the following

8   conclusion about the impact of FISAAA section 803:

9
10
11
12

> The Department has reviewed the recent FISA amendments
> as well as the various discovery responses received from
> AT&T[/Verizon] to date and has reluctantly concluded
> that the amendments passed by Congress and signed into
> law by President Bush appear to preclude further
> investigation into the activities which initially gave
> rise to this proceeding.

13

> * * *

14
15
16
17

> [T]he Department notes that the FISA amendments are the
> subject of a number of legal challenges.  Therefore,
> whatever disposition the Board decides is appropriate
> for this proceeding, the Department recommends that it
> be undertaken without prejudice to the ability of the
> Department or any other complaining party to refile
> should the legal landscape change in the future.

18   Doc #624-2 at 2-5.  The letter recommended the assessment of

19   disciplinary fines against AT&T for its refusal to respond to the

20   "non-security related requests" between May 25 and October 2, 2006.

21   Id at 3.  As to Verizon, the letter stated "the Department does not

22   believe there is any basis for continuing this matter."  Id at 4.

23   The record before the court contains no documents dated after the

24   two August 8, 2008 letters pertinent to the Vermont proceedings.  It

25   may be assumed from the posture of the proceedings in the federal

26   case, however, that VtPSB has not followed VtDPS's suggestion that

27   it terminate its investigations.

28   \\

8

**United States District Court**
For the Northern District of California

Clayton v AT&T, C 07-1187, arises out of investigative subpoenas issued to AT&T by commissioners of the Missouri Public Service Commission (MoPSC) regarding information AT&T allegedly disclosed to the NSA. Doc #536-2 (Ex A). The subpoenas seek, for example:

> (1) The number of Missouri customers, if any, whose calling records have been delivered or otherwise disclosed to the [NSA] and whether or not any of those customers were notified that their records would be or had been so disclosed and whether or not any of those customers consented to the disclosure;
>
> * * *
>
> (3) The nature or type of information disclosed to the NSA, including telephone number, subscriber name and address, social security numbers, calling patterns, calling history, billing information, credit card information, internet data and the like.

Id at 22.

Because the commissioners considered AT&T's response inadequate, they moved pursuant to Missouri law to compel AT&T to comply with the investigation in Missouri state court. AT&T then removed the case to the United States District Court for the Western District of Missouri. Shortly thereafter, the government filed United States v Gaw (now Clayton), 07-1242, on July 26, 2006, seeking declaratory and injunctive relief against the MoPSC and AT&T. The telecommunications carrier defendants in Clayton v At&T have moved to dismiss Clayton's pending application to compel production of documents and to compel witnesses to appear and answer questions. Doc #594. The United States moves for summary judgment in both Clayton cases.

\\

\\

9

United States District Court
For the Northern District of California

B

Section 803, part of FISAAA's Title II under the headings "Protections for Electronic Communication Service Providers" and "procedures for implementing statutory defenses under [FISA],"[2] provides as follows:

SEC 803.   PREEMPTION.

(a) IN GENERAL.  ──

No State shall have authority to ──

(1) conduct an investigation into an electronic communication service provider's alleged assistance to an element of the intelligence community;

(2) require through regulation or any other means the disclosure of information about an electronic communication service provider's alleged assistance to an element of the intelligence community;

(3) impose any administrative sanction on an electronic communication service provider for assistance to an element of the intelligence community; or

(4) commence or maintain a civil action or other proceeding to enforce a requirement that an electronic communication service provider disclose information concerning alleged assistance to an element of the intelligence community.

(b) SUITS BY THE UNITED STATES. ──

The United States may bring suit to enforce the provisions of this section.

(c) JURISDICTION. ──

The district courts of the United States shall have jurisdiction over any civil action brought by the United States to enforce the provisions of this section.

(d) APPLICATION. ──

This section shall apply to any investigation, action, or proceeding that is pending on or commenced

---

    [2] This provision is codified at 50 USC § 1885 (definitions), 50 USC § 1885a (procedures for implementing statutory defenses), 50 USC § 1885b (preemption) and 50 USC § 1885c (reporting).

**United States District Court**
For the Northern District of California

1

                  **after the date of the enactment of the FISA Amendments**

2

                  **Act of 2008.**

3

**Section 703 (50 USC § 1881) defines "intelligence community" to**

4

**have the meaning given the term in section 3(4) of the National**

5

**Security Act of 1947 (50 USC § 401a(4)). That section defines**

6

**"intelligence community" to include fifteen enumerated federal**

7

**agencies and offices including the NSA and to provide for certain**

8

**officials including the president to designate additional**

9

**departments or agencies as "element[s] of the intelligence**

10

**community."**

11

        **The United States submitted with its reply brief the**

12

**October 26, 2007 report of the Senate Select Committee on**

13

**Intelligence to accompany Senate Bill 2248 (SSCI Report), S Rep No**

14

**110-209, 110th Cong, 1st Sess (2007). Doc # 596-2 (Ex A). Senate**

15

**Bill 2248 was the original Senate bill that, together with the**

16

**House bill (H 3773), resulted in the compromise legislation that**

17

**ultimately passed both houses on July 8, 2008 (H 6304). See FISA**

18

**Amendments of 2008, HR 6304, Section-by-section Analysis and**

19

**Explanation by Senator John D Rockefeller IV, Chairman of the**

20

**Select Committee on Intelligence. Doc #469-2 at 51.**

21

        **The SSCI Report listed among the committee's**

22

**recommendations for legislation amending FISA, "narrowly**

23

**circumscribed civil immunity should be afforded to companies that**

24

**may have participated in the President's program based on written**

25

**requests or directives that asserted the program was determined to**

26

**be lawful." Doc #596-2 at 3. The SSCI Report included a lengthy**

27

**summary of the instant MDL cases, of which the following excerpt**

28

**concerns the cases that are the subject of the instant motions:**

**United States District Court**
For the Northern District of California

1

### BACKGROUND ON PENDING LITIGATION

2

**\* \* \***

3

### STATE REGULATORY INVESTIGATIONS

4
5
6
7
8

> In addition to the civil declaratory judgment and damages suits, a number of state public utilities commissions have opened investigations of electronic communication service providers for their alleged provision of assistance to the intelligence community. These public utilities commissions are seeking to investigate whether the companies violated state privacy rights by providing customer records to agencies of the federal government.

9
10
11
12
13
14

> The federal government filed suit seeking to enjoin state officials in five states from further investigation of electronic communication service providers for their alleged disclosure of customer telephone records to the National Security Agency. These cases were transferred by the Judicial Panel on Multidistrict Litigation to the Northern District of California in February 2007. In July 2007, the district court found that these state investigations were not preempted by either the Supremacy Clause or the foreign affairs power of the federal government.

15
16
17
18

> The Government may yet prevail in preventing state regulatory investigations of whether particular providers furnished customer records to the intelligence community. But, like the civil suits filed against providers, the outcome of this litigation is uncertain and will likely involve further protracted proceedings.

Doc #569-2 at 7-8.

19
20

### PREEMPTION

21
22
23
24
25

> Section 204 of the bill preempts state investigations or required disclosure of information about the relationship between individual electronic communication service providers and the intelligence community. The provision reflects the Committee's view that, although states play an important role in regulating electronic communication service providers, they should not be involved in regulating the relationship between electronic communication service providers and the intelligence community.

26

Doc #569-2 at 12.

27
28

> [S]ection 204 provides for the protection, by way of preemption, of the federal government's ability to conduct intelligence activities without interference by state investigations.

**United States District Court**
For the Northern District of California

Doc #569-2 at 13.

> Section 204.  Preemption of state investigations
>
> Section 204 adds a Section 803 to the new Title VIII.
> It addresses investigations that a number of state
> regulatory commissions have or might begin to
> investigate cooperation by state regulated carriers
> with US intelligence agencies.  Section 803 preempts
> these state investigations by prohibiting them and
> authorizing the United States to bring suit to enforce
> the prohibition.

Doc #569-2 at 23-24.

## II

The United States moves for summary judgment in all six cases on the single ground that section 803 expressly preempts the state investigations that the United States has sought to enjoin by means of these actions.  Doc #536.  The United States asserts that section 803 is a valid exercise of the federal government's power under the Supremacy Clause and that "state laws or activities are expressly preempted when there is an explicit federal statutory command that they be displaced."  Id at 7-8.

The United States contends that all of the state proceedings, including the various subpoenas, administrative orders and interrogatories issued by the five states at issue in these motions, are "investigation[s] into an electronic service provider's alleged assistance to an element of the intelligence community" barred by the new section 803(a)(1) and/or attempts to "require through regulation or any other means the disclosure of information about an electronic communication service provider's alleged assistance to an element of the intelligence community" prohibited by section 803(a)(2).  Doc #536 at 10.  On this basis, the United States seeks a declaration that section 803 preempts the

13

United States District Court

For the Northern District of California

state investigations at issue, a permanent injunction against the state investigations and summary judgment in its favor.  Id at 11.

Defendant state officials (and plaintiff Clayton) oppose the United States' motion (Doc #590), as do intervenors "James Cowie et al," a number of Maine telephone customers represented by the Maine Civil Liberties Union (Doc #591).  The state officials make two major contentions in opposition.  First, they contend that section 803 is unconstitutional and therefore unenforceable because it infringes on states' sovereign powers, "including those embodied in the Tenth Amendment."  Doc # 590 at 6.  Second, they contend that section 803's plain language does not purport to preempt all aspects of the states' "'investigations'" (this term is in quotation marks in the states' joint brief).  Id.  They contend that many of the challenged actions are not "investigations" of the type prohibited by section 803 but are either attempts to determine whether an investigation is warranted or inquiries pertaining to the telecommunications companies' policies regarding the treatment of customer information, such as privacy policies and policies regarding the disclosure of such information to law enforcement agencies.  Id at 19-22.

Whereas the United States' previous motion for summary judgment in these cases was concerned in large part with unsuccessfully attempting to establish federal preemption in the absence of an express statute (see order of July 24, 2007, Doc #334 at 19-34; 2007 WL 2127345 at *8-15, the United States now has in its corner a statute that purports to preempt state laws expressly in regards to the matters it concerns.  The states contend, however, \\

14

United States District Court
For the Northern District of California

1   that section 803 is "an unconstitutional encroachment on state
2   sovereignty."  Doc #590 at 9.

3           The states rely on Printz v United States, 521 US 898
4   (1997), in which the Supreme Court struck down provisions of the
5   Brady Handgun Violence Prevention Act that required state law
6   enforcement officials to conduct background checks on handgun
7   purchasers (portions of 18 USC § 922).  The Printz opinion examined
8   the Constitution's structure with reference to historical sources
9   such as the Federalist Papers in determining that under the United
10  States' system of "dual sovereignty," the states retained "a
11  residuary and inviolable sovereignty."  Id at 918-19.  The Printz
12  court also relied on more recent Supreme Court jurisprudence
13  examining federal laws that impose requirements on state
14  governments, especially New York v United States, 505 US 144 (1992)
15  (also cited by state defendants here), holding that federal
16  legislation exceeded the federal government's powers when it
17  required states either to enact legislation providing for the
18  disposal of radioactive waste generated within their borders or to
19  take title to, and possession of, the waste because "the Federal
20  Government may not compel the States to enact or administer a
21  federal regulatory program."  505 US at 188, cited at 521 US at 926.

22          While acknowledging that this case is unlike Printz in
23  that the federal law at issue is not mandatory on state officials
24  but rather prohibitory (Doc #590 at 13), state defendants argue that
25  "the regulation of utilities is one of the most important of the
26  functions traditionally associated with the police power of the
27  States," quoting Arkansas Electric Cooperative Corp v Arkansas
28  Public Service Comm'n, 461 US 375, 377 (1983) as is protecting the

**United States District Court**
For the Northern District of California

privacy of states' citizens, citing this court's July 24, 2007 order
(at 33, 2007 WL 2127345 at 14).  Doc #590 at 12.  On this basis,
they argue, federal interference is especially problematic.

State defendants' constitutional challenge to section 803
rests on three major arguments: (1) section 803, by prohibiting
states from acting to protect the interests of their own citizens,
erodes state sovereignty and "confuses the paths of political
accountability" (doc #590 at 12, 14); (2) section 803 is especially
problematic because of its "sweeping, indeterminate language"
barring "any" state investigation into even "alleged assistance" by
telecommunications companies to intelligence agencies and preventing
states from requiring disclosure through "any means" (id at 15); and
(3) section 803 suffers in comparison to section 802 because it
lacks the "procedural safeguards" and "balancing of interests"
embedded in section 802 such as the requirement of a certification
of facts by the Attorney General, judicial review by means of the
substantial evidence standard and provisions allowing parties to
participate in the judicial process (Doc #590 at 17).

The states also contend that at least some of the state
investigations or actions have been reconfigured in light of the
suits by the United States threatening injunctive relief and the
enactment of FISAAA to avoid directly inquiring about NSA
wiretapping activities.  For example, they assert that in the
Vermont proceeding, the VtPSB "explicitly excluded from the scope of
the docket any inquiry into assistance provided by the carriers to
the NSA involving disclosure of customer records."  Doc #601 at 3.
They assert that in its briefing on the instant motion, the United
States ignores the states' attempts to avoid trenching on areas of

United States District Court

For the Northern District of California

federal authority and instead "fixat[es] on the original information requests, several of which did explicitly reference the NSA," thus creating "a straw man, which it then attacks by arguing that the States have refused to 'limit their inquiries to matters that clearly do not implicate national security activities.'"  Id at 4-5. At oral argument, they asserted that the proper approach for the court to take in applying section 803 to the pending state investigations is to "parse through the individual inquiries and decided which * * * are covered by 803 and which aren't."  RT (Doc #621) at 41:7-9; see also 47:24-48:3.

The United States argues, by contrast, that section 803 presents no constitutional problem because:  (1) the Tenth Amendment is inapplicable because no power is reserved to the states in connection with powers "delegated to the United States by the Constitution" including national security and foreign affairs; (2) nothing prevents the United States from preempting state authority to regulate utilities, with or without a national security justification; (3) the concepts discussed in <u>Printz</u> are not relevant because there is no federal "commandeering" of state officials here and it is constitutionally permissible for the federal government to "impose preconditions to continued state regulation of an otherwise pre-empted field" (citing <u>FERC v Mississippi</u>, 456 US 742 (1982)). Doc #596 at 6-10.  As for the states' critiques of section 803 such as overbreadth and lack of procedural safeguards, the United States merely asserts that these are not legally relevant to the court's analysis.  Id at 10-11.  In essence, the United States contends that even a clumsily-drafted federal statute may constitutionally preempt state regulation.

**United States District Court**
For the Northern District of California

As for the scope of section 803's preemptive reach in these proceedings, the United States argues that it is broad, encompassing the investigations in their entirety.  The United States accuses the states of "cherry picking" aspects of their inquiries that do not directly concern national security in arguing against dismissal.  Doc #596 at 12.  The United States invokes the concepts of field and conflict preemption in arguing that Congress intended to "cover the field," leaving no supplemental role for the states.  Id at 17 n 7.  The United States argues that section 803 does not allow the "parsing" of interrogatories advocated by the states because the very investigations at issue are prohibited, RT (Doc #12) at 12: 10-17, but that, "if in the future there is an inquiry that the states wish to make that does not concern an alleged federal intelligence activity, there is nothing that would be an obstacle to that."  Id at 12:24-13:2.

The court agrees with the United States: section 803 does not violate the Tenth Amendment because it does not "commandeer" state officials; rather, it prohibits them from investigating certain activities initiated by federal agencies that are "element[s] of the intelligence community."  Because intelligence activities in furtherance of national security goals are primarily the province of the federal government, Congressional action preempting state activities in this context is especially uncontroversial from the standpoint of federalism.

The court also agrees with the United States that the appropriate remedy is to enjoin all of the investigations at issue in these cases.  The documents submitted to the court leave no doubt that all of the investigations were initiated for the purpose of

**United States District Court**
For the Northern District of California

delving into alleged electronic surveillance activities initiated by the NSA.  While it is true that some of the individual questions propounded in each inquiry do not directly concern national security, the remedy proposed by the states —— suppressing only those that make mention of national security topics while allowing the rest to go forward —— would be a pointless exercise that is not without substantial cost both to the telecommunications companies affected and to the states themselves.  More importantly, the "parsing" of interrogatories requested by the states does not appear to be the role for the federal courts that Congress envisioned in enacting section 803.  Section 803(a)'s prohibition on "conduct[ing] an investigation into an electronic communication service provider's alleged assistance to an element of the intelligence community," is broader than barring certain questions.  There is simply no getting around the fact that the purpose of each of the state proceedings at issue in these cases was and is to find out about the telecommunications companies' cooperation with an "element of the intelligence community."

As the United States has stated herein, should any state launch a new investigation not prompted by events or allegations prohibited by section 803 to which the facially innocuous interrogatories and information requests herein are relevant, nothing bars the state from propounding those very questions in that new inquiry.  In this context, however, even the "innocuous" interrogatories and information requests must be enjoined.

Turning at last to the separate issues presented by Clayton v AT&T, C 07-1187, plaintiff Clayton opposes the United States' motion on the additional ground that the United States has

United States District Court

For the Northern District of California

never intervened in, and is not otherwise a party to, that action and therefore is not in a position to move for summary judgment. Doc #592 at 2-3.  He also argues that: even if given leave to intervene, the United States' role would be limited, under 28 USC § 2403(a), to presenting arguments and evidence regarding the constitutionality of FISAAA (id at 3-5); section 803 is inapplicable because it provides for enforcement by the United States only by "bring[ing] suit" (id at 5-6); and while section 802 (codified at 50 USC § 1885a) appears to be the proper vehicle under which the United States could seek dismissal, the United States has not invoked section 802.  Id at 6-9.

The United States brushes off as "insubstantial" Missouri's argument that the United States must intervene in order to seek the dismissal of Clayton v AT&T, contending that the entry of judgment in United States v Clayton would moot the state officials' attempts to enforce their subpoenas in Clayton v AT&T. Doc # 596 at 17-18.  Alternatively, the United States argues that the court "can and should treat the Government's motion as one for intervention" under FRCP 24 because the case is in its early stages, section 803 confers the enforcement role on the United States and there is no prejudice to the Clayton v AT&T plaintiffs as they are the defendants in the related action.  Id at 18.

The court agrees with the United States that requiring a separate motion for intervention is unwarranted and that section 803 bars the underlying proceeding at issue.  Because plaintiff Clayton has brought the action in question in his capacity as a state official, the action is barred by section 803(a)(4)("No state shall have authority to * * * commence or maintain a civil action or other

United States District Court

For the Northern District of California

proceeding to enforce a requirement that an electronic communication service provider disclose information concerning alleged assistance to an element of the intelligence community"), section 802 does not apply.  The United States is authorized to bring suit to enforce section 803 and has already done so in United States v Clayton. Under section 803(a)(4), Clayton v AT&T cannot be maintained and is hereby DISMISSED.


                                  III

     The United States' motion for summary judgment in United States v Clayton, C 07-1242; United States v Reishus, C 07-1323; United States v Farber, C 07-1324; United States v Palermino, et al, C 07-1326; United States v Volz, et al, C 07-1396 is GRANTED.  The state proceedings at issue in each of those cases are prohibited by section 803 (50 USC § 1885b) and are hereby enjoined pursuant to this court's authority under that statute.  Clayton et al v AT&T Communications of the Southwest, Inc, et al, C 07-1187 is DISMISSED with prejudice.

     The United States is directed to submit a proposed form of judgment in accordance with this order.


     IT IS SO ORDERED.

                              _____
                              VAUGHN R WALKER
                              United States District Chief Judge